UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE SWAFFORD,<br><br>    Plaintiff,<br><br>    v.<br><br>R. NEUSHMID, et al.,<br><br>    Defendants. | No.  2:19-cv-0721 KJM AC P<br><br>ORDER AND FINDINGS &<br>RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.

I.   Procedural History

This case proceeds upon the second amended complaint. ECF No. 19. On screening the second amended complaint, the court found that plaintiff had stated a cognizable claim against defendant Rohrer and ordered service of the complaint.[1] ECF No. 20. After the close of discovery, defendant moved for summary judgment. ECF No. 46. Plaintiff filed an opposition (ECF No. 50) that was accompanied by a request for leave to file his exhibits separately because he was unable to obtain timely copies (ECF No. 50-1). The request was granted (ECF No. 51),
////

---

[1] Although the original and first amended complaint named additional defendants (ECF Nos. 1, 17), the second amended complaint named only defendant Rohrer (ECF No. 19).

1

and plaintiff proceeded to re-file his opposition with the missing exhibits (ECF No. 54).[2] After defendant filed his reply (ECF No. 55), plaintiff filed a nearly identical copy of his opposition and exhibits (ECF No. 58).[3] Plaintiff also filed a surreply (ECF No. 61) after being denied leave to do so (ECF No. 60).

## II.  Plaintiff's Allegations

The second amended complaint alleges that defendant Rohrer violated plaintiff's rights under the Eighth Amendment. ECF No. 19 at 2-11. Plaintiff alleges that on April 28, 2018, he was reaching for a cup while on the top bunk when he felt a sharp pain in his lower back and right hip that caused him to fall to the floor. Id. at 3. He appears to allege that although Rohrer had previously approved a lower bunk chrono for plaintiff, sometime after September 2017 Rohrer began refusing to renew the chrono, leading to plaintiff being assigned an upper bunk. Id. at 5-6. Plaintiff appears to further allege that having to climb up to and down from the top bunk exacerbated his lower back and hip pain, which ultimately led to his fall. Id. at 5. After plaintiff fell off of the top bunk, Rohrer continued to deny plaintiff a lower bunk chrono based on outdated medical reports, even though he was aware of plaintiff's current issues, and told plaintiff that he did not care about his medical issues. Id. at 7-8. As a result of the denial of a lower bunk chrono and his resulting fall, plaintiff suffered injuries to his lower back and right hip, neck pains, and chronic migraines. Id. at 11.

## III.  Motion for Summary Judgment

### A.  Defendant's Arguments

Defendant contends that he was not deliberately indifferent to plaintiff's serious medical needs and alternatively that he is entitled to qualified immunity. ECF No. 46-2.

### B.  Plaintiff's Response

At the outset, the court notes that plaintiff has failed to file a separate document in

---

[2] The opposition memorandum is identical to the originally filed opposition except that the re-filed memorandum is missing pages 11-22. The originally filed memorandum appears to be complete.

[3] The re-filed opposition and exhibits appear to be identical to the filing at ECF No. 54 except that the copy of the memorandum is complete, one page is missing from Exhibit O, and Exhibit P is a different document.

response to defendant's statement of undisputed facts that identifies which facts are admitted and which are disputed, as required by Local Rule 260(b).

"Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. (citation omitted).

Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition which have evidentiary support in the record will be considered.

Plaintiff's opposition largely consists of reproductions of defendant's summary judgment motion, the second amended complaint, and the screening order, with unexplained citations to his exhibits and various legal standards interspersed throughout. ECF No. 50. Though plaintiff's argument is difficult to discern, he appears to contend Roher was deliberately indifferent to his serious medical needs because he rescinded plaintiff's lower bunk accommodation and refused to reinstate it based on an old x-ray and without a current medical examination. Id. at 27, 31-32, 44-45, 51. Plaintiff also appears to argue that defendant's notes indicate that he had conditions that should have qualified him for a lower bunk accommodation, and that portions of defendant's summary judgment motion are contradictory. Id. at 30-35, 47-48.

With respect to plaintiff's surreply, Local Rules 230, which sets out the procedures for civil motions, contemplates a motion, a response, and a reply. There is no provision for a

surreply, and plaintiff was explicitly denied leave to submit further briefing. ECF No. 60. Moreover, the court has reviewed plaintiff's surreply and finds that it merely repeats arguments that plaintiff has already made. The surreply will therefore be stricken from the record.

## IV. Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

1 Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the
2 existence of this factual dispute, the opposing party may not rely upon the allegations or denials
3 of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
4 admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.
5 Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a
6 fact "that might affect the outcome of the suit under the governing law," and that the dispute is
7 genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving
8 party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

9 In the endeavor to establish the existence of a factual dispute, the opposing party need not
10 establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
11 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
12 trial."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)
13 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the
14 "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see
15 whether there is a genuine need for trial."  Matsushita, 475 U.S. at 587 (citation and internal
16 quotation marks omitted).

17 "In evaluating the evidence to determine whether there is a genuine issue of fact, [the
18 court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls
19 v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the
20 opposing party's obligation to produce a factual predicate from which the inference may be
21 drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to
22 demonstrate a genuine issue, the opposing party "must do more than simply show that there is
23 some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations
24 omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the
25 non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391
26 U.S. at 289).

27 Defendants simultaneously served plaintiff with notice of the requirements for opposing a
28 motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for

5

summary judgment. ECF No. 46-1; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice of the requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

V.   Legal Standard for Deliberate Indifference to a Serious Medical Need

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

Deliberate indifference is a very strict standard. It is "more than mere negligence." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Even civil recklessness—failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known"—is insufficient to establish an Eighth Amendment claim. Id. at 836-37 (citation omitted). A prison official will be found liable under the Eighth Amendment when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A plaintiff can establish deliberate indifference "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1060).

A difference of opinion between inmate and prison medical personnel—or between medical professionals—regarding the appropriate course of treatment does not by itself amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). To establish that a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the course of

////

treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citation omitted).

VI. Undisputed Material Facts

Plaintiff did not separately respond to Defendant's Statement of Undisputed Facts (DSUF), and the facts are therefore deemed undisputed except as otherwise discussed. Additional facts have been taken from medical records provided by plaintiff, the authenticity and accuracy of which are not in dispute.

Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) who arrived at California State Prison (CSP)-Solano on September 4, 2014. DSUF (ECF No. 46-3) ¶ 1. Defendant Rohrer is a physician and surgeon who worked at CSP-Solano (through California Correctional Health Care Services (CCHCS)) and was plaintiff's primary care physician beginning in approximately 2015 until his retirement in October 2019. DSUF ¶¶ 2-3. Defendant's duties included providing medical treatment to inmates by examining and diagnosing physical and mental ailments, reviewing patient medical records, prescribing medications, prescribing medical devices or accommodations, and determining any other medical necessities of patients. DSUF ¶ 3.

The CCHCS maintains a Comprehensive Accommodation Formulary that governs when physicians may provide lower bunk accommodation to patients and sets out specific medical criteria that govern when a health care provider may prescribe a lower bunk accommodation to a patient. DSUF ¶¶ 4-5. In general, when a patient requests a lower bunk accommodation from a physician, the physician references the formulary to determine whether the patient meets any of the medical indications for a lower bunk accommodation. DSUF ¶ 6. A physician may also request a non-formulary lower bunk accommodation if, for example, there is a medical necessity that is not otherwise identified in the formulary. Id. The provider's assessment may include an evaluation of the patient's ability to perform activities of daily living and any limitations or restrictions thereof. Id.

////

////

From his arrival at CSP-Solano until August 16, 2015, plaintiff had a lower bunk accommodation.[4] DSUF ¶ 10; ECF No. 54 at 76. However, he remained assigned to a lower bunk until February 25, 2018.[5] DSUF ¶ 7. From February 25, 2018, to April 28, 2018, plaintiff was assigned to an upper bunk. DSUF ¶ 8. After his fall on April 28, 2018, plaintiff had two temporary lower bunk accommodations: one from April 28, 2018, to May 4, 2018, and one from May 1, 2018, to August 1, 2018. DSUF ¶ 11. From April 28, 2018, until September 3, 2019, plaintiff was continuously assigned to a lower bunk. DSUF ¶ 9.

After plaintiff arrived at CSP-Solano, he was seen by defendant for low back pain on several occasions. On March 10, 2015, plaintiff was seen by defendant for a complaint of chronic low back pain. ECF No. 54 at 78. Plaintiff stated that his symptoms had worsened over the last month and that he had had "similar symptoms in the past that responded well to epidural steroid injection." Id. Defendant noted that plaintiff had "[c]hronic low back pain with right trochanteric bursitis," prescribed a ten-day course of baclofen, and indicated that plaintiff would be considered for epidural steroid injection if he was able to discontinue Coumadin, which he was taking for another condition. Id.

On June 25, 2015, plaintiff was seen by defendant for a follow up on his chronic low back pain. Id. at 81. Plaintiff "denie[d] bowel or bladder dysfunction or other red flags with respect to his chronic low back pain." Id. The notes indicate that plaintiff had "[c]hronic low back pain

---

[4] Defendant's statement of facts asserts that plaintiff did not have a lower bunk accommodation between January 1 and February 17, 2015. DSUF ¶ 10. However, medical records provided by plaintiff indicate he was approved for a twelve-month lower bunk accommodation on February 26, 2014. ECF No. 54 at 76. Because the accuracy of the records is not in dispute and the date plaintiff's lower bunk accommodation was issued is immaterial, the court will assume, for purposes of summary judgment, that plaintiff had an accommodation from the date he arrived at CSP-Solano until August 16, 2015. To the extent plaintiff appears to dispute defendant's claim that he did not have a lower bunk accommodation between August 16, 2015, and his fall (ECF No. 50 at 25 n.3), the evidence he cites does not establish that he had an accommodation during that period.

[5] Although plaintiff repeatedly states that he was moved to an upper bunk in September 2017 (ECF No. 50 passim), he cites only to the complaint, which alleges that his lower bunk accommodation was discontinued in September 2017 and he was moved to an upper bunk at an undisclosed later date (ECF No. 19 at 6). He also does not appear to dispute the accuracy of the records submitted by defendant, which show he was moved to an upper bunk on February 25, 2018. See ECF No. 46-4 at 68. DSUF ¶ 7 is therefore deemed undisputed.

with right trochanteric bursitis, not at goal" and that he was referred for a Kenalog injection of the right trochanteric bursa. Id. Plaintiff received a Kenalog injection on July 6, 2015. Id. at 85.

On May 23, 2017, plaintiff was seen by defendant for a chronic care follow up for several conditions, including chronic low back pain. ECF No. 54 at 90. Plaintiff reported that he was experiencing low back pain, taking acetaminophen for pain management, and was programming and performing all of his activities of daily life. DSUF ¶ 12. He denied voiding dysfunction and did not report any "red flag" symptoms that indicated neurological problems associated with his lower back pain. Id. Defendant conducted a physical examination of plaintiff during which plaintiff did not present, and defendant did not observe, any physical limitations. DSUF ¶ 13. During the examination, plaintiff requested a lower bunk accommodation, but he did not meet the medical indications for the accommodation as set forth in the formulary. DSUF ¶¶ 15-16. Based on his review and assessment of plaintiff's medical condition, review of plaintiff's medical records, plaintiff's subjective complaints, and the physical examination of plaintiff, defendant determined that there was no medical reason to prescribe plaintiff a lower bunk accommodation and that plaintiff faced no risk of harm from an upper bunk assignment. DSUF ¶ 17. After the examination, defendant recommended a transcutaneous electrical nerve stimulation (TENS) unit to manage plaintiff's chronic low back pain. DSUF ¶ 14.

On December 18, 2017, plaintiff was seen by defendant for a chronic care follow up for several conditions, including chronic low back pain. ECF No. 54 at 91. At the appointment, plaintiff reported that he was continuing to experience chronic low back pain and that he was programming and performing his activities of daily life. DSUF ¶ 18. He denied bowel or bladder dysfunction. Id. Defendant examined plaintiff, who did not present, nor did defendant observe, any physical limitations. DSUF ¶ 19. Plaintiff declined medication to help manage some sciatica symptoms and was advised to exercise regularly for health maintenance. DSUF ¶ 20. He did not meet the medical indications for a lower bunk accommodation and based on his review and assessment of plaintiff's medical condition, review of plaintiff's medical records, plaintiff's subjective complaints, and the physical examination of plaintiff, defendant determined that there

////

was no medical reason to prescribe plaintiff a lower bunk accommodation and that plaintiff faced no risk of harm from an upper bunk assignment. DSUF ¶¶ 21-22.

On April 20, 2018, plaintiff was seen by defendant for a complaint of lower back pain and hip pain. ECF No. 54 at 93; DSUF ¶ 23. During the examination, defendant reviewed a nurse's note from April 9, 2018, in which plaintiff reported that his right hip pain had begun three months earlier, that he had had low back pain for the past fifteen years, and that he was experiencing 6/10 pain. DSUF ¶ 24. Defendant also reviewed a nurse's note from April 12, 2018, in which plaintiff reported that his chronic low back pain was getting worse, and a November 13, 2014 x-ray that revealed moderate to severe lower lumbar degenerative joint disease (DJD) at L3-4, L4-5, and L5-S1. DSUF ¶¶ 25, 28. Plaintiff reported to defendant that Tylenol with codeine was providing relief and that it was difficult to get up and down from the upper bunk. DSUF ¶ 26. He denied bowel or bladder dysfunction or other red flags with respect to lower back pain. DSUF ¶ 29. Defendant performed an examination that revealed no spasm, no muscular atrophy, and mildly decreased range of motion on forward flexion in plaintiff's back. DSUF ¶ 27. During the examination, plaintiff requested a lower bunk accommodation, but he did not meet the medical indications for the accommodation as set forth in the formulary. DSUF ¶¶ 31-32. Based on his review and assessment of plaintiff's medical condition, review of plaintiff's medical records, plaintiff's subjective complaints, and the physical examination of plaintiff, defendant determined that there was no medical reason to prescribe plaintiff a lower bunk accommodation and that plaintiff faced no risk of harm from an upper bunk assignment. DSUF ¶ 33.

On April 28, 2028, plaintiff reported to Dr. Mo[6] that he fell from his upper bunk and injured his right side. DSUF ¶ 37. He noted pain in his right trapezius, shoulder, hip, and knee and reported that his hip was feeling worse. Id. Dr. Mo noted that plaintiff was able to bear weight for a couple of steps, but appeared unsteady even with a cane. DSUF ¶ 38. Plaintiff was provided with crutches and a temporary lower bunk accommodation that was set to expire on

---

[6] Although the statement of facts refers to the doctor who saw plaintiff as "Dr. Stevens" DSUF ¶¶ 37-39, plaintiff's medical records indicate that he was seen by Dr. Steven Mo, ECF No. 46-4 at 36-37.

10

May 4, 2018. Id. Plaintiff saw Dr. Mo the following day and reported worsening neck and back pain following his fall. DSUF ¶ 39. Plaintiff's crutches were exchanged for a walker due to stability concerns, and he was instructed to continue using acetaminophen with codeine for pain management. Id. Prior to his fall, plaintiff had never used a cane, wheelchair or any device to help him walk. DSUF ¶ 34.

On May 1, 2018, plaintiff, who was still using the walker, was seen by defendant and reported right hip pain with worsening neck and back pain. DSUF ¶ 40. Defendant reviewed an x-ray of plaintiff's hip from April 30, 2018, which showed no fracture or bony injury, and performed an examination which indicated moderately decreased range of motion in plaintiff's back. DSUF ¶¶ 40-41. Plaintiff was referred for an x-ray of his neck and back, referred to physical therapy for low back pain and possible cervical strain, and prescribed a temporary lower bunk accommodation that was set to expire on August 1, 2018. DSUF ¶¶ 42-43.

Plaintiff saw defendant again on May 31, 2018, for a follow up and reported that he was continuing to experience low back pain. DSUF ¶ 44; ECF No. 54 at 121. Defendant reviewed a May 15, 2018 physical therapy note that indicated that plaintiff exhibit a non-antalgic gait pattern and no longer required a walker or other assistive device. DSUF ¶ 45. He also reviewed x-rays of plaintiff's hip, back, and neck taken on April 30, 2018; May 17, 2018; and May 18, 2018; respectively. Id. Defendant examined plaintiff and confirmed that plaintiff was ambulating effectively without an antalgic gait and determined that plaintiff's neck and low back pain was stable. Id. Defendant did not believe the plaintiff required any assistive device for walking at that time and recommended that that plaintiff continue physical therapy exercises and medications as needed. DSUF ¶ 46.

On June 22, 2018, plaintiff was seen by defendant and reported continuing neck and low back pain. DSUF ¶ 47. Defendant reviewed plaintiff's recent x-rays and physical therapy records and referred plaintiff for possible Kenalog injection to his right hip and for a pain management evaluation. DSUF ¶¶ 47-48.

On July 27, 2018, plaintiff was seen by defendant and was using a cane at the time. DSUF ¶ 49. Defendant reviewed a July 19, 2018 chart note from Dr. Williams that stated that

11

plaintiff had told Dr. Williams that he was able to walk one mile with the assistance of a cane and that Dr. Williams had performed a physical examination of plaintiff and recorded his findings, told plaintiff that he did not qualify for a lower bunk accommodation under the formulary, and recommended physical therapy.  Id.  Based on his review of plaintiff's medical history, examination of plaintiff, and his medical training and experience, defendant determined that plaintiff did not meet the criteria for a lower bunk accommodation, there was no medical reason to prescribe plaintiff a lower bunk accommodation, and that plaintiff faced no risk of harm from an upper bunk assignment.  DSUF ¶ 50.

On October 5, 2018, plaintiff was seen by defendant and complained of chronic low back pain and trochanteric bursitis of his right hip.  DSUF ¶ 51.  Plaintiff had had a Kenalog injection on August 6, 2018, that had provided pain relief; was undergoing physical therapy; and was programming and performing his activities of daily life.  Id.  Plaintiff's physical examination was unremarkable, his low back and hip pain were stable, and he was advised to continue physical therapy, eat healthy, and exercise.  Id.  Based on his review of plaintiff's medical history, examination of plaintiff, and his medical training and experience, defendant determined that plaintiff did not meet the criteria for a lower bunk accommodation, there was no medical reason to prescribe plaintiff a lower bunk accommodation, and that plaintiff faced no risk of harm from an upper bunk assignment.  DSUF ¶ 52.

On December 10, 2018, defendant examined plaintiff, who presented for headaches.  DSUF ¶ 53.  The record indicates that plaintiff's chronic low back pain was stable and that defendant explained the importance of exercise.  ECF No. 54 at 117.  Based on his review of plaintiff's medical history, examination of plaintiff, and his medical training and experience, defendant determined that plaintiff did not meet the criteria for a lower bunk accommodation, there was no medical reason to prescribe plaintiff a lower bunk accommodation, and that plaintiff faced no risk of harm from an upper bunk assignment.  DSUF ¶ 53.

VII.    Discussion

    A.    Deliberate Indifference

Although plaintiff alleges that defendant stated he did not care about plaintiff's medical

issues (ECF No. 50 at 11, 13), the evidence shows that defendant consistently provided plaintiff with treatment for his back and hip pain.  Prior to his fall, plaintiff was regularly seen for his back and hip pain and defendant examined him and prescribed treatment.  DSUF ¶¶ 12-33; ECF No. 54 at 78, 81.  After his fall, plaintiff continued to be seen on a regular basis and received treatment for both his back and hip pain, including a temporary lower bunk accommodation right after the fall.  DSUF ¶¶ 37-53.  Any triable issue as to whether defendant made the alleged statement is therefore immaterial, because Dr. Rohrer's actions do not demonstrate a lack of care.

Plaintiff's arguments that he should have been granted a lower bunk accommodation prior to his fall are unsupported by any evidence and establish only a disagreement as to his treatment.  To the extent that plaintiff attempts to argue that he should have been granted an accommodation under the formulary because he was "post-operation/post-injury," had a "severe orthopedic condition of the hips . . . or upper extremity," and had "severe weakness of upper or lower extremity" (ECF No. 50 at 34), he fails provide evidence that he fell into any category prior to his fall, and the evidence demonstrates that he was granted a temporary accommodation after his fall.  DSUF ¶¶ 11, 38, 43.  The record also reflects that at the time plaintiff's post-fall temporary accommodation expired, he no longer qualified for a lower bunk accommodation.  DSUF ¶¶ 49-50; ECF No. 46-4 at 53, 56.

Plaintiff's belief that he should have been granted a lower bunk accommodation prior to his fall and that his accommodation after the fall should have been extended amounts to nothing more than a difference of opinion as to the proper course of treatment, and he has therefore failed to show that defendant was deliberately indifferent to his serious medical needs.  See Toguchi, 391 F.3d at 1058 (difference of opinion between inmate and prison medical personnel regarding appropriate course of treatment does not establish deliberate indifference to serious medical needs).  For this reason, defendant's motion for summary judgment should be granted.

B. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457

U.S. 800, 818 (1982) (citations omitted).  In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident.  Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009) (overruling Saucier's requirement that the two prongs be decided sequentially).  Since the facts taken in the light most favorable to plaintiff do not show the violation of a constitutional right, it is not necessary for the court to address defendant's qualified immunity argument.

VIII.    Plain Language Summary of this Order for a Pro Se Litigant

Defendant provided treatment for your low back pain during the time period that he was responsible for your care, and there is no evidence that his decision to not provide a lower bunk accommodation prior to your fall was medically unacceptable.  There is also no evidence that his decision not to extend your lower bunk accommodation either before or after your fall was medically unacceptable.  Even if you are right that you could have or even should have had a lower bunk assignment, that does not make Dr. Rohrer's different opinion a violation of your Eighth Amendment rights.  It is therefore being recommended that defendant's motion for summary judgement be granted.

Accordingly, IT IS HEREBY ORDERED THAT the Clerk of the Court is directed to strike plaintiff's surreply (ECF No. 61) from the record.

IT IS FURTHER RECOMMENDED that defendant's motion for summary judgment (ECF No. 46) be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The

////

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 2, 2022

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE